The court will proceed to the sixth case, the United States v. Ingram. Ms. Varner. May it please the court, my name is Sarah Varner and I represent William Ingram. Mr. Ingram's case comes to you following a jury trial on eight counts. At the jury trial, Mr. Ingram did not contest his guilt on the first four counts, which were robberies. Instead, Mr. Ingram's theory at trial was that he wanted to test the government's proof as to whether he possessed a firearm in furtherance of the robberies. I'd like to talk today about the strength of the evidence that Mr. Ingram carried a firearm during the first in-time robbery, which was the Eyes of India robbery on October 16th. It was the government's burden to prove beyond a reasonable doubt that Mr. Ingram knowingly possessed a firearm on that date. And at the close of the government's evidence, trial counsel moved for a directed verdict, saying that the government had not provided evidence by which a reasonable juror could find beyond a reasonable doubt that a firearm was brandished in counts five through eight. When the district court denied the motion, the district court relied upon Mr. Ingram's girlfriend and co-defendant's testimony that a real gun was present at at least one of the robberies. On surveillance videos and photos of firearms which appeared to show a real gun, which were counts six, seven, and eight, Mr. Ingram's actions with the gun in counts six, seven, and eight, which included counting down, telling, or implying to witnesses that he would shoot, and testimony of witnesses who heard or saw a gun. And again, that's in counts six, seven, and eight. You had witnesses who heard a gun, who saw a gun in close proximity. And it's our position that none of that evidence is persuasive as to count five in the first robbery. No firearm was ever recovered, and that's not in any way dispositional. But it's important. You never see a gun in the surveillance footage, as we argued in our brief. And the witness never testified that she saw a gun. Ms. Patel testified that at the close of business on that day, she sat at the back of her shop facing away from the door. She was approached from behind, and that she felt at that point what she believed to be a gun in her back. That's the only evidence we have on count five that a gun was used. Well, it's not exactly the only evidence. The video shows him putting something against her back. And of course, we know he used a gun in the robberies he committed over the course of the next week. And I guess that really is, it comes down to what the question is in this case. The jurors were instructed explicitly, consider the evidence on each count and charge separately. And did the jury at that point accumulate the evidence and say, well, because it looks like we can see a gun in the surveillance and in the footage and in the testimony on counts six, seven, and eight, we're going to infer from the testimony of Ms. Patel having something in her back and from a surveillance video showing something against her back that that something was a gun. And the only evidence from Ms. Patel was a period of two minutes. She testified that she had no experience with guns, so we have a lay witness with no experience with guns who doesn't see a gun, who testifies something hard was against her back, and a photo, as Judge Rovner correctly points out, showing something held against her back. Was the jury legally precluded? And if so, what's the source of the law from considering that a gun was used in each of the other robberies that occurred within this seven-day period? The jury was, and that's a question that I tried a lot to run down in what is the actual answer to that question. And in our brief, we say, you know, the jury was specifically instructed to consider the evidence on each count separately. You have to consider, you have to prove on each count beyond a reasonable doubt that he possessed a firearm. Right, but in a serial robbery case, right, that's happening within a very, very limited amount of time. I mean, I think Rivera speaks to it a little bit. Do you believe, you know, it's kind of a normative matter that the law should not allow that? You know, I think that's what, like, severance would speak to. I think they do have to correct the government. You're not going to get severed, though. These are going to get tried together. You're not going to have five separate trials. But when you're speaking about whether or not evidence can be accumulated in that way, I think the sort of concept of severance speaks to that, that there is a concept in the law that we don't like. Why is it, why is the proper word accumulated that way? Why isn't the better reference, the jury, kind of in keeping with what Judge Robner was observing, you can look at the photograph and say, I don't know what he's pushing against her back from the photo, but it's something, right? Because if it was nothing, she probably would have turned around and said, what are you doing? So something's getting pushed against his back, or her back, right? Yes. Okay, and she very much believed, even though she didn't see it, that it was a gun or some kind of weapon. She did believe. Why can't the evidence from the other robberies inform that finding by the jury? Well, yeah, what the victim's saying makes a lot of sense, because he committed four other, three other robberies within this time period, and they all had guns in them. Well, I think that the instructions to the jury are the most informative in this case. Consider the evidence on each count separately. I don't know the answer to whether or not the jury could, it was legally precluded. Was it entitled to consider as Facebook video, or was that legal error? The jury could consider the Facebook video, but the judge limited the Facebook video to only if, if you've decided that what he carried was, that he likely did what he was accused of, you're entitled to consider that Facebook video to decide whether or not the gun was real, not to decide whether or not he carried a gun. Right. So, and I think that if. The reason that that's right, the reason that that's right is because it shows he had an opportunity on the October 16th date to commit an armed robbery with a gun. Why would he have that opportunity? Because he's told you in the video he keeps guns with him. Correct, Your Honor. So why is that reasoning any different with respect to whether the other three can be considered? Well, I think that, again, that the jury was required to consider whether or not, beyond a reasonable doubt, the government proved on that date he possessed a firearm. And I think it's persuasive, also, that this was the first in time robbery. And as the government points out, you know, he did some very specific things in the following robberies. He pointed guns directly at people. He threatened to shoot. He counted down on his hand. He wasn't shy about showing a gun to people in the subsequent robberies. This first robbery was very different. And I think. Well, the victim didn't think he was playing around. I mean, I can tell you that, right, from reading the evidence. I mean, she didn't think this was just some, you know, something being feigned. No, I think that's right. But this robbery was very different than the robberies that followed. And in the course of the actual cases from this court, this robbery is very different than some of the cases that talk about whether or not it's proven that a firearm was possessed. Mr. Ingram, in the first robbery, we don't have a defendant who verbally indicated in any way that he had a gun or threatened to shoot anyone in count five. We did not have a witness who saw a gun in close proximity or otherwise. No, lay witness testimony is perfectly appropriate. But in this case, we don't even have lay witness testimony that said, yeah, I saw what I interpret to be a gun. She said, I felt something against my back. It was hard. And we have a witness also with no familiarity with guns. We don't have somebody who, like in the last in time robbery, could hear a click and could recognize from that click that that was the sound of a bullet being chambered. We have somebody, we have a lay witness. We have a first in time robbery. We have a lay witness who is completely unfamiliar with guns, who did not see a gun. We had a defendant who never made a statement that there was a gun, who never made any threat to shoot a gun, who didn't count down on his hand. Other than on his Facebook video. A month prior, and that was only relevant to consider whether or not if there was a gun, whether it was real. This is very different than the other cases from this court in that manner. Should we make anything of Ms. Cobb's statement the next day that he had a gun? I don't think so. Because again, Ms. Cobb's testimony goes to whether or not the government can prove beyond a reasonable doubt that he carried a gun on that date. And I see them in my rebuttal time, and I'd like to save the rest of my time if that's okay. Thank you. Mr. Hilton. May it please the court. Lawrence Hilton for the United States. There were two issues brought on the pill, but since Mr. Ingram's counsel is only focused on the sufficiency of the evidence argument, I'll begin there, and if the court would like me to talk about the second issue, I'll do that as well. Now with regards to the sufficiency of the evidence, the evidence was more than sufficient to convict the defendant of brandishing a firearm in furtherance of a crime of violence, as charged in Count 5 of the indictment. Questions were asked about the testimony regarding the other robberies. Specifically regarding Robberies 3 and Robberies 4, there was evidence, witness testimony from witnesses who not only saw the gun, but they saw that gun in close proximity. Don't you think Ms. Garner is making a fair point, though? Is she not? You've got to be careful with the jury, don't you? Saying, I don't know whether he had a gun or he didn't have a gun on that first robbery, but he definitely had him on 3 and 4, and that's enough for me on 1. Well, the jury wasn't… That's what she's worried about, and isn't that a fair worry? Not in this case, Your Honor. Why not? Because the jury was instructed, as Ms. Varner pointed out, that it should look at each count separately. However, the jury was not instructed that they should look at the evidence in a vacuum. As this court pointed out, there was a robbery that occurred on the 16th, a robbery that occurred just the next day on the 17th, and then a robbery on the 20th and the 23rd. The jury could very well use the evidence that was presented to it about the robbery that occurred on the 17th, the 20th, and the 23rd, as well as the defendant's Facebook account, to make a reasonable inference that the defendant also possessed a gun on the robbery that occurred on October 16th of 2017. And there was strong circumstantial evidence regarding the fact that the defendant possessed a real firearm on the 16th as well. First of all, the court talks about the still frame photograph. I believe it's exhibit number eight in the brief that was presented to this court by the United States. And in that particular photograph, it shows Mr. Ingram with something pressed against the victim's back. The victim described it as hard, and based on her knowledge of guns, or lack thereof, she believed it to be a gun. We know from the next day, based on Ms. Cobb's testimony, that the defendant used a real gun. We also have testimony from the victims in the third robbery that they had experience with guns. And this is just five days after that first robbery where the defendant, Ms. Ingram, actually pointed a gun at two of the victims, victims who had experience with guns, and they testified that based on their experience with guns, they believed the gun to be real. There's also the social media evidence that this court has talked about, evidence from the defendant's Facebook account, where the defendant says that he always keeps a pistol on him and he made that statement just one month prior to the robbery in question on October 16th of 2017. So the evidence was sufficient, and we believe that a reasonable jury not only could have, but did find that Ingram possessed and brandished a firearm in furtherance of a crime of violence. So if the court doesn't have any further questions... Well, Mr. Hilton, I suppose if it was a knife, it would give the same... We'd get the same testimony about feeling real hard and metal. Well, if it was a knife, we might likely also see blood, because as we can see from Exhibit No. 8, whatever that object is, it is pressed firmly into the victim's back. Well, I'm talking about maybe the reverse of a... the handle of a knife. I'm just suggesting that... Do we leave the jury in the land of speculation on this? That's my concern. Well, the jury didn't have to speculate in this case because of the abundance of evidence in the other three robberies, robberies that occurred in a very short time of one another. So the jury was not asked to speculate because it had sufficient evidence to come to the conclusion that it did, and that's that Mr. Ingram possessed and brandished a gun during this robbery. If there are no questions on that, I can move on to the other issue regarding whether or not an attempt Hobbs Act robbery is a crime of violence. And really this court's precedent in England and in Hill foreclosed on any argument that an attempt Hobbs Act robbery is anything but a crime of violence. As this court stated in Hill, an attempt to commit a crime that is classified as a crime of violence is a crime of violence, and in England this court noted that a Hobbs Act robbery is a crime of violence. So this court's precedent in those cases foreclosed on any argument. Mr. Ingram, of course, suggests in his reply brief that our analysis in Hill is inconsistent with the Supreme Court's reasoning in James. Is he right, do you think? He's not, Your Honor. This court's logic in Hill was sound in that the court noted that an intent to commit, or excuse me, that if an individual intends to commit a crime and that crime is a crime of violence, then that individual has, number one, not only taken a substantial step towards the commission of that crime, but that individual has intended to commit every element of that crime, including to commit violence. So Mr. Ingram is wrong. If there are no other questions, the United States will rest on its brief. Thank you. Thank you, Mr. Hilton. Ms. Varner. I would just say that finding the evidence sufficient on count five I think would be a break from this court's body of law regarding possession of a firearm. And I would also just say that Mr. Ingram does acknowledge that we are currently foreclosed in our argument about whether attempt counts as a crime of violence, but we do preserve the issue for later review. Thank you. Thank you, Ms. Varner. Thank you, Mr. Hilton. The case is taken under advisement.